```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

VICTORINOX SWISS ARMY, INC. and :
VICTORINOX AG,                  :
                                :
     Plaintiffs,                :
                                :
v.                              :    Case No. 3:24-cv-1735 (RNC)
                                :
TRADE CHANNEL LLC and JOHN DOES :
1-10,                           :
                                :
     Defendants.                :
```

RULING AND ORDER

In this action for trademark infringement, plaintiffs Victorinox Swiss Army, Inc. and Victorinox AG (collectively "plaintiffs" or "Victorinox") allege that since February 2024 or earlier, defendant Trade Channel LLC ("the defendant") has advertised and sold a high volume of non-genuine goods bearing Victorinox's registered trademarks on Amazon.com. The defendant was served with the summons and complaint in November 2024 but has failed to appear or otherwise defend the claims. The complaint alleges that Victorinox sent the defendant cease-and-desist letters accusing it of infringement in February, March, August, and September 2024, all of which the defendant also apparently ignored. A default against the defendant having been entered by the Clerk, the plaintiffs now move pursuant to Federal Rule of Civil Procedure 55(b) for entry of a default judgment. They request that the judgment include: (1) a

1

---

permanent injunction preventing the defendant from continuing to infringe; (2) an award of $84,217.13 in damages; and (3) an order freezing the funds in the defendant's account with Amazon.com, Inc. so they can be used to satisfy the damages award. For reasons stated below, the motion is granted in full.

I.

"On a motion for default judgment after default has entered, 'a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor, but it is also required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'" Mirlis v. Greer, 80 F. 4th 377, 383 (2d Cir. 2023) (quoting Finkel v. Romanowicz, 577 F. 3d 79, 84 (2d Cir. 2009)).

In this case, the plaintiffs' allegations, accepted as true, plausibly establish, directly or by reasonable inference, the defendant's liability as a matter of law on all counts in the complaint.

    A. Counts 1, 2, and 4: Trademark Infringement and Unfair Competition

"To sufficiently state claims for trademark infringement and unfair competition under the Lanham Act, the plaintiff must show first, that its mark is protected, and second, that the defendant's use in commerce of the allegedly infringing mark

2

would likely cause confusion as to the origin, sponsorship, or affiliation of the defendant's goods with plaintiff's goods." 1-800 Contacts, Inc. v. JAND, Inc., 119 F. 4th 234, 246 (2d Cir. 2024) (citations omitted).  "The test for trademark infringement and unfair competition under Connecticut law is identical to the test under the Lanham Act."  Verilux, Inc. v. Hahn, No. 3:05-cv--00254 (PCD), 2007 WL 2318819, at *10 (D. Conn. Aug. 10, 2007).

    The first part of this test is satisfied.  Victorinox's trademarks are registered with the United States Patent and Trademark Office, which is "*prima facie* evidence that they are valid and protectable."  Vans, Inc. v. MSCHF Prod. Studio, Inc., 88 F. 4th 125, 136 (2d Cir. 2023).

    As to the second part, in determining whether a plaintiff has plausibly demonstrated a likelihood of confusion, courts consider the Polaroid factors.  See Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961).  "Those factors include the following: (1) strength of plaintiff's trademark; (2) the degree of similarity between the two marks; (3) the proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that defendant adopted the imitative mark in bad faith; (7) quality of the defendant's products; and

(8) sophistication of consumers in the relevant market." Adidas Am., Inc. v. Thom Browne Inc., 599 F. Supp. 3d 151, 160 (S.D.N.Y. 2022) (citing Polaroid Corp., 287 F.2d at 495). "The Polaroid factors are not exclusive and no single factor is dispositive." Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC, 823 F.3d 153, 160 (2d Cir. 2016). Analysis of these factors "is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." Star Indus. Inc. v. Bacardi & Co., 412 F.3d 373, 384 (2d Cir. 2005).

Analyzed in light of the Polaroid factors, the plaintiffs' allegations establish the requisite likelihood of confusion as to the origin, sponsorship, or affiliation of the parties' products.

As to the first factor, Victorinox's trademarks are strong. "To gauge a mark's strength, we consider two factors: its inherent distinctiveness, and its distinctiveness in the marketplace." Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 743 (2d Cir. 1998). "[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection." Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986). As discussed, the trademarks at issue

4

here are registered with the United States Patent and Trademark Office.

As to the second factor, the marks used by the defendant are not only similar to Victorinox's registered marks but identical to them.

The third factor "focuses on whether the parties' products compete in the same or similar channels of trade." Hope Organics LLC v. Preggo Leggings LLC, No. 1:21-cv-02416 (TMR), 2021 WL 5919367, at *7 (S.D.N.Y. Dec. 15, 2021) (citing Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 480 (2d Cir. 1996)). Here, the defendant has sold on Amazon the same types of products listed for sale by authorized sellers of the plaintiffs' products – multifunctional pocketknives and cutlery.

Because "the parties' products are already in direct competition, 'there is really no gap to bridge, and [the fourth] factor is [thus] irrelevant to the Polaroid analysis.'" Hope Organics LLC, 2021 WL 5919367, at*7 (quoting Star Indus. Inc., 412 F.3d at 387).

The fifth factor asks whether there is evidence of actual consumer confusion.  "Although actual confusion need not be shown to prevail under the Lanham Act," "[t]here can be no more positive or substantial proof of the likelihood of confusion." LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A., 209 F. Supp. 3d 612, 671 (S.D.N.Y. 2016), aff'd, 720 F. App'x 24 (2d

5

Cir. 2017) (citations omitted).  "To be relevant under the Lanham Act, the confusion must be of a type that 'could inflict commercial injury [on the plaintiff] in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation.'"  Id. (quoting Lang v. Ret. Living Pub. Co., 949 F.2d 576, 583 (2d Cir. 1991)).  In this case, the complaint cites several negative consumer reviews of such a type.  See Hope Organics LLC, 2021 WL 5919367, at *8 ("[I]t is not extraordinary in today's Internet age for consumers to communicate with brands in the form of online comments and reviews, and for parties to rely on such comments to present any evidence of actual confusion.").  In the cited reviews, the consumers complain that the products they received were "previously used, damaged, or dirty," with one further stating, "I do not recommend."  ECF No. 1, at ¶¶ 42-45.

The plaintiffs contend that the sixth factor – the defendant's bad faith in adopting the mark - should weigh in their favor because the defendant failed to comply with numerous cease-and-desist letters.  I agree that the defendant's nonresponsiveness, viewed in the context provided by the plaintiffs' allegations as a whole, is suggestive of bad faith.  It is at least arguable, however, that more must be shown to support a reasonable inference of bad faith.  See Disney

6

Enters., Inc. v. Sarelli, 322 F. Supp. 3d 413, 437 (S.D.N.Y. 2018). Accordingly, I treat this factor as neutral.

The plaintiffs concede that the seventh factor is neutral, and they provide no evidence with respect to the eighth factor.

Looking at the factors in their totality, I conclude that the plaintiffs have demonstrated the requisite likelihood of confusion.

Because the plaintiffs' marks are protected, and the defendant's use of the marks likely causes confusion, the plaintiffs have sufficiently established the defendant's liability as a matter of law for trademark infringement and unfair competition.

    B. Count 3: False Advertising

The plaintiffs' allegations also establish the defendant's liability for false advertising as a matter of law. "To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH, 843 F.3d 48, 65 (2d Cir. 2016). Each of these elements is satisfied.

Crediting the plaintiffs' allegations, the defendant made false statements by marketing as "New" on Amazon's website

7

products that in fact were repackaged. Under Amazon's policies, a product may be marketed as "New" only if it is brand new and in its original packaging. ECF No. 1, at ¶ 118. The complaint alleges that the defendant shipped products it listed as "New" in packaging that differed from Victorinox's original packaging. Id. at ¶¶ 120-24. The message that these products were "New" was therefore literally false. See Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 158 (2d Cir. 2007)(message is literally false "[i]f the words or images, considered in context, necessarily imply a false message").

The message was material because it "misrepresented an inherent quality or characteristic" of the plaintiffs' products in a way that was likely to influence consumer purchasing decisions. See Church & Dwight Co., 843 F.3d at 70-71 (stating that, in many cases, a finding of actual or likely injury to the plaintiff will satisfy the materiality standard). The message was placed in interstate commerce. See Unlimited Cellular, Inc. v. Red Points Sols. SL, 677 F. Supp. 3d 186, 203 (S.D.N.Y 2023) (false advertising on e-commerce websites undoubtedly occurs in interstate commerce). And the complaint plausibly alleges that Victorinox has suffered damage to its goodwill, reputation, and profits because of the defendant's false advertising. In particular, the complaint cites multiple negative reviews from

8

consumers who ordered products labeled as "New" but received damaged or defective products.

Accordingly, the plaintiffs have established the defendant's liability as a matter of law for false advertising.

### C. Count 5: Deceptive Trade Practices

The Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110b, prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  To determine whether a practice is unfair, courts consider "(1)[w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers."  Ventres v. Goodspeed Airport, LLC, 275 Conn. 105, 154-55 (2005).  "All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."  Id. (quoting Hartford Elec. Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 367-68 (1999)). All three criteria are satisfied here. As just discussed, Victorinox's allegations establish as a matter of law

that the defendant's conduct violated the Lanham Act and Connecticut common law. Moreover, Victorinox has plausibly alleged that the defendant engaged in unethical or unscrupulous behavior by deceiving consumers regarding the condition and origin of its products. This deception substantially injured consumers by inducing them to pay for products that were not actually "New" or genuine Victorinox products. Accordingly, the plaintiffs have established the defendant's liability as a matter of law for deceptive trade practices.

### D. Count 6: Tortious Interference

Under Connecticut law, the elements of tortious interference with contractual relations are "(1) the existence of a contractual or beneficial relationship, (2) the [defendant's] knowledge of that relationship, (3) the [defendant's] intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the [defendant's] tortious conduct." Companions & Homemakers, Inc. v. A&B Homecare Sols., LLC, 348 Conn. 132, 144 (2023). Here, the plaintiffs' allegations establish as a matter of law that the defendant tortiously interfered with Victorinox's contractual relations with authorized sellers.

Accepting the plaintiffs' allegations as true, Victorinox entered into agreements with "authorized sellers" that allowed

10

them to market and sell genuine Victorinox products online to end-use consumers but not re-sellers. Victorinox first alerted the defendant to the existence of these contractual relationships in a cease-and-desist letter dated February 19, 2024. The letter informed the defendant that Victorinox's contracts with authorized sellers prohibited them from selling Victorinox products to unauthorized sellers like the defendant. Nevertheless, the defendant continued to induce authorized sellers to breach their contracts by selling products to the defendant; and the defendant then resold the products on Amazon, committing the independent tort of trademark infringement. This conduct harmed Victorinox's brand reputation and relationships with authorized sellers. Accordingly, the plaintiffs have established the defendant's liability as a matter of law for tortious interference.

    E. Additional Factors

"In deciding whether to enter default judgment, courts in this Circuit typically focus on three factors: (1) whether the default was willful, (2) whether denying the application for default would prejudice the movant, and (3) whether a meritorious defense exists." Cartagena-Cordero v. Five Star Cars, LLC, No. 3:19-cv-01728 (SRU), 2020 WL 5912601, at *1 (D. Conn. Oct. 6, 2020) (citing Palmieri v. Town of Babylon, 277 F. App'x 72, 74 (2d Cir. 2008); Pecarsky v. Galaxiworld.com Ltd.,

249 F.3d 167, 171-74 (2d Cir. 2001)). All three factors weigh in favor of granting a default judgment here.

The defendant was properly served on November 19, 2024, yet it has failed to answer or otherwise respond, just as it failed to respond to the series of cease-and-desist letters previously issued by Victorinox. The defendant's continued nonresponsiveness supports a finding that its default is willful.

As to the second factor, "[w]hen a plaintiff has no additional steps available to secure judicial relief, it would prejudice that plaintiff to deny that plaintiff's motion for a default judgment." Cartagena-Cordero, No. 3:19-cv-01728 (SRU), 2020 WL 5912601, at *6 n.12. That is the case here.

Finally, "[a] sufficient showing of a meritorious defense would consist of 'evidence of facts that, if proven at trial, would constitute a complete defense.'" Cartagena-Cordero, 2020 WL 5912601, at *6 n.11 (quoting SEC v. McNulty, 137 F.3d 732, 740 (2d Cir. 1998)). "Courts have held that where a plaintiff has established a defendant's liability and the defendant has not filed an answer, the plaintiff has satisfied this element." Id. (citing Andrus v. Juniper Grp., Inc., No. 2:08-cv-01900 (JS)(AKT), 2011 WL 4532694, at *7 (E.D.N.Y. Sept. 26, 2011)). As discussed above, the plaintiffs' allegations, accepted as true, plausibly establish the defendant's liability as a matter

of law on all the counts in the complaint, and there is no reason to think the defendant might nevertheless have a complete defense to any of them.  See Andrus, 2011 WL 4532694, at *7 (entering default judgment in part because "the Court is unable to determine whether [defendant] has a meritorious defense as no such defense has been presented").  Accordingly, the plaintiffs' motion for default judgment is granted.

## II.

The plaintiffs request that the judgment include a permanent injunction preventing the defendant from continuing to infringe Victorinox's trademark rights.  This request is also granted.

Under the Lanham Act, a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark."  15 U.S.C. § 1116.  A permanent injunction may be entered when the plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391

(2006).  All four factors support entry of a permanent injunction against further infringement by the defendant.

Under the Lanham Act, "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction. . . ."  15 U.S.C. § 1116(a).  See, e.g., Johnson v. Mi Rancho, No. 3:19-cv-00862 (MPS), 2021 WL 6498264, at *7 (D. Conn. Aug. 16, 2021) ("Plaintiffs enjoy a presumption of irreparable harm, satisfying the first permanent injunction factor" because "[d]efendants have defaulted, admitting their liability.").

An award of money damages, in an amount permitted by law, would be inadequate to address the reputational injury to Victorinox caused by the defendant's sale of defective and damaged products bearing Victorinox's trademarks.  See id. (citing Beastie Boys v. Monster Energy Co., 87 F. Supp. 3d 672, 677-78 (S.D.N.Y. 2015)) (finding that monetary damages do not compensate for reputational damage to a brand).  And there is no assurance such an award would be effective in halting the defendant's unlawful conduct.

The balance of hardships weighs in Victorinox's favor because it would serve to protect the plaintiffs' legitimate

interest without prejudicing any legitimate interest of the defendant.

Finally, an injunction would benefit the public. See N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) ("[T]he public has an interest in not being deceived — in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."); U.S. Polo Ass'n v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011) ("The consuming public has a protectable interest in being free from confusion, deception and mistake."). And, in general, "the public interest is served by the protection of property interests in trademarks." Lavatec Laundry Tech., GmbH v. Lavatec Inc., No. 3:13-cv-00056 (SRU), 2014 WL 6633047, at *2 (D. Conn. Nov. 13, 2014).

### III.

The plaintiffs next request an award of damages in the amount of $84,217.13. Under the Lanham Act, a trademark owner may recover, "subject to the principles of equity . . . (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).

"In order to recover an accounting of an infringer's profits, a plaintiff must prove that the infringer acted in bad faith" or "willfully infringe[d]." Int'l Star Class Yacht

Racing Ass'n v. Tommy Hilfiger, USA, 80 F.3d 749, 753 (2d Cir. 1996).  "[A] defendant's knowledge that its actions constitute an infringement establishes that the defendant acted willfully." Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1115 (2d Cir. 1986).  The defendant was on notice as of February 2024 that it was infringing the plaintiffs' trademarks, yet it continued to engage in infringement.  This is sufficient to support a finding that the defendant willfully infringed.  See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F. Supp. 2d 585, 600 (S.D.N.Y. 2010), amended on reconsideration (Mar. 23, 2010) ("Courts have repeatedly found willfulness where a defendant receives a cease and desist letter but continues the infringing conduct.")

To quantify the defendant's profits, a plaintiff need only show the amount of the defendant's revenue; "a defendant bears the burden to prove any 'deductions' from its gross revenue in calculating profits."  Fendi Adele S.R.L. v. Ashley Reed Trading, Inc., 507 F. App'x 26, 32 (2d Cir. 2013).  If the defendant "fail[s] to present any specific evidence of its costs," the court makes no deductions from the total revenue figure when awarding disgorged profits.  Id.  The plaintiff must provide a "basis upon which the court may establish damages with reasonable certainty."  House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010).  It may establish

16

such a basis with affidavits and documentary evidence.  See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53-54 (2d Cir. 1993).

Victorinox provides an affidavit detailing how it calculated the defendant's total revenue from sales of infringing products between October 31, 2021, and January 30, 2025.  See ECF No. 21-2.  Victorinox explains that it performed the calculation on data it received from Amazon pursuant to a subpoena.  See id. at ¶¶ 4-10.  The plaintiffs have submitted the data provided by Amazon.  See id. at 21-176.  The plaintiffs' calculation based on the data generates a total of $84,217.13 in revenue.  This total appears to be accurate.

IV.

Finally, the plaintiffs request an order requiring Amazon to freeze all funds in the defendant's Amazon account to satisfy the judgment.  Federal courts have inherent equitable power to freeze assets to assure the availability of funds to satisfy a final judgment under the Lanham Act.  See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); Spin Master Ltd. v. Alan Yuan's Store, 325 F. Supp. 3d 413, 427-28 (S.D.N.Y. 2018) (allowing asset

restraint to remain in place post-judgment under Lanham Act to "aid in the enforcement of the judgment" by preventing defendants from hiding assets). This equitable power permits courts to order that third parties freeze defendants' assets. See, e.g., Lovesac Co. v. www.lovesac.com, No. 2:22-cv-00056 (JNP), 2022 WL 504192, at *5 (D. Utah Feb. 18, 2022) (freezing assets in defendants' PayPal accounts containing profits of alleged counterfeiting scheme).

Revenue earned by third-party sellers on Amazon are deposited into sellers' Amazon accounts and may be disbursed every 14 days. ECF No. 21-2, at ¶¶ 12-13. Since the funds are direct proceeds of the defendant's infringement, freezing them to satisfy the judgment is an appropriate exercise of equitable power.

V.

Accordingly, the plaintiffs' motion is granted in full. The Clerk may enter judgment and close the file.

So ordered this 14th day of October 2025.

                                      /s/ RNC
                                Robert N. Chatigny
                        United States District Judge